UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | : | No. 3:17MJ1849 (SALM) |
|---|---|---|
| | : | |
| v. | : | |
| JORGE ALBERTO BLAS SANCHEZ | : | June 11, 2018 |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS
### MOTION TO DISMISS CRIMINAL COMPLAINT WITHOUT PREJUDICE

On June 7, 2018, the Government moved to dismiss the pending criminal complaint in this matter without prejudice. The defendant does not oppose dismissal and the only issue at this time is whether the dismissal should be without prejudice as requested by the Government or with prejudice as advocated by the defendant. Importantly, at the time of the Government's filing of its motion, there was no violation of the Speedy Trial Act. Indeed, the defendant had waived speedy trial time through and including June 12, 2018. *See* Dkt. No. 37. Accordingly, while the defendant argues that the standards of 18 U.S.C. § 3162(a)(1) are applicable in determining whether any dismissal here should be with or without prejudice, this statutory provision is inapplicable because there has been no Speedy Trial Act violation. Rather, the Government seeks dismissal under Fed. R. Crim. P. 48(a).

Rule 48(a) provides, in pertinent part, that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Although Rule 48(a) requires leave of court, a "court is generally required to grant a prosecutor's Rule 48(a) motion unless dismissal is clearly contrary to manifest public interest." *United States v. Pimentel*, 932 F.2d 1029, 1033 (2d Cir. 1991)(internal citation and quotation omitted). "The rationale behind this general rule is that the '[e]xecutive remains the absolute judge of whether a prosecution should be initiated and

the first and presumptively the best judge of whether a pending prosecution should be terminated." *United States v. Doody*, 2002 W.L. 562644 (S.D.N.Y. Apr. 16, 2002)(quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)); *see also United States v. Hayden*, 860 F.2d 1483, 1487 (9th Cir. 1988)("While the judiciary has been authorized to supervise prosecutorial decisions to dismiss, Rule 48(a) was not enacted for the purpose of usurping the traditional role of the prosecutor to determine whether to terminate a pending proceeding."). "Dismissal pursuant to Rule 48(a) is generally without prejudice." *Doody*, 2002 W.L. 562644 at *2 (citing *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2d Cir. 1974)). "Courts dismiss cases under Rule 48(a) with prejudice or deny such motions only where the prosecutor acted in bad faith…or where dismissal followed by recharge would amount to prosecutorial harassment." *Id.* (internal quotations and citations omitted). In making this assessment, "there is a presumption of good faith on the part of the prosecutor." *Id.* (internal quotation and citation omitted); *see also United States v. Nix*, 2017 W.L. 4641257 (W.D.N.Y., Oct. 13, 2017)(applying the standards set forth in *Doody* in holding that a Rule 48(a) dismissal should be without prejudice).

Here, the Government has not engaged in any bad faith and defendant does not set forth any facts from which this Court can find any bad faith. On the contrary, the government has at all times conducted itself in a manner that has been fundamentally fair and in the spirit of finding a proper and just resolution of this matter.

As a preliminary matter, the undersigned filed an appearance in this matter on February 6, 2018, for the purpose of covering any court appearances that might arise, but day to day discussions with defense counsel in an effort to resolve this matter were handled by a fellow Assistant United States Attorney who departed the United States Attorney's Office at the end of

April, 2018. Upon the departure of that AUSA, the undersigned assumed responsibility for efforts related to potential resolution of this matter. The facts set forth below are taken from the undersigned's general knowledge of the proceedings in this matter and a review of electronic mail upon which the undersigned was copied.

On November 29, 2017, the government obtained a criminal complaint in which the defendant was charged, among other things, with conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. On December 1, 2017, the defendant appeared in the Central District of California and the Court released the defendant on bond. On December 18, 2017, defense counsel in the District of Connecticut filed a motion to continue the probable cause hearing and, in support, stated, "the requested continuance will enable Mr. Blas Sanchez to appear in the District of Connecticut on December 22, 2017, to investigate pre-indictment resolution of this case…[and] to review discovery that the government intends to produce in the coming weeks and investigate various matters before the government seeks indictment…" *See* Dkt. No. 11. Thereafter, it appears that the government produced some discovery material to the defendant. The parties also had further discussions in which the defendant made clear to the government that he was ready and willing to admit conduct related to marijuana distribution but he denied involvement in the cocaine conspiracy. In late January 2018, in order to explore the nature of the defendant's defense, especially where defendant had no prior record and was eligible for relief under U.S.S.G. § 5C1.2, the government suggested that defendant and his counsel appear at a meeting in Connecticut on February 21, 2018, to discuss the defense advanced by the defendant. Meanwhile, on February 20, 2018, the defendant moved to continue the probable cause hearing again and represented that additional time was needed to review discovery that had

been produced and to explore pre-indictment resolution. *See* Dkt. No. 22. The parties conducted the planned meeting on February 21 as scheduled.

Following the February 21 meeting, the Government advised defense counsel that it wished to verify representations made in the meeting by examining the contents of the defendant's cell phone. Initially, it appeared that the defendant intended to consent to a search of his phone. To that end, on March 1, 2018, the government sent defense counsel a consent to search form. On March 11, not having heard back from the defendant, the government sent an email to defense counsel inquiring about the status of the consent form. On March 15, defense counsel responded that his client had changed his mind with respect to consent and no longer wished to consent. According to defense counsel, his client had some trust issues with the case agents because of some statements they had made in the February 21 meeting.

On March 27, 2018, the government reached out to defense counsel and reminded the defendant that the probable cause hearing was April 6. Government counsel advised defense counsel that the defendant could seek another extension to continue discussions or the government would have to indict. The government also inquired about the defendant's position on consent to search of his phone. On April 4, the defendant moved to continue the probable cause hearing and represented that "counsel for both sides are in active discussions and are exchanging information." *See* Dkt. No. 27. On the same day, following discussions between government and defense counsel, the government revised the consent form for the defendant's cell phone to make clear that the government could not use any information discovered on the phone against the defendant. Government counsel sent the modified consent form to defense counsel on April 4. Thereafter, the government suggested a conference call between the government, defense counsel and the defendant to discuss resolution. The parties scheduled the

call for April 16.  On April 16, defense counsel notified the government that the defendant did not want to proceed with the call.  Accordingly, the parties cancelled the call.

On May 9, defense counsel became involved in a trial before Judge Shea that consumed a significant portion of time in May.  On May 23, 2018, knowing that the Court had stated that it would not continue the probable cause hearing beyond May 30, the government obtained a search warrant for the defendant's cell phone.  On May 24, 2018, the Court conducted a telephonic conference at the conclusion of which the Court continued the probable cause hearing to June 12.  Thereafter, the government advised defense counsel and it would notify him as soon as the cell phone forensics were completed.  On May 29, case agents advised the undersigned that the defendant's phone had a six-digit passcode and that the local DEA technician had been unable to get into the phone.  Case agents also informed the undersigned that they could send the phone to a forensic services vendor and that it would take approximately two weeks for the results.  The undersigned informed defense counsel and, given the June 12 deadline, suggested that defense counsel again discuss consent to search the phone with the defendant.  The undersigned also advised that the content of the phone would be proffer-protected pursuant to the terms of an agreement executed at the February 21 meeting.  On June 5, 2018, defense counsel informed the undersigned that the defendant still did not wish to consent to search of the phone and was unwilling to provide the passcode.

At this point, the government had two choices in light of the June 12 deadline: either move forward with an indictment or dismiss the case under Rule 48(a) and continue the investigation.  While the undersigned was satisfied that there was probable cause to support the cocaine conspiracy set forth in the criminal complaint, the undersigned also believes that additional evidence of knowledge and intent is necessary to present this case to a trial jury.

While there was probable cause to believe that the defendant engaged in marijuana distribution, additional evidence is required to establish a nexus between that conduct and the District of Connecticut. The government believes that leads for developing additional evidence of knowledge and intent as to the cocaine conspiracy may exist on the defendant's cell phone and is not ready to proceed to indictment or negotiate a resolution to some other charge without an examination of the content of that phone. Indeed, the examination of that phone may prove determinative. Accordingly, the Government chose to file a Rule 48(a) dismissal to allow sufficient and further time for the examination of the defendant's phone and to develop any derivative evidence from that phone.

In reaching this decision, the Government has not acted in bad faith. As the facts set forth above demonstrate, the Government took concrete steps (1) to ensure that defendant's claims of innocence as to the cocaine conspiracy were heard, (2) to explore the credibility of that defense and (3) to negotiate a consent to search the defendant's phone that addressed concerns the defendant had. The government took this course of action because it was fair, prudent and balanced the interests of both parties in finding an appropriate resolution. While the defendant is certainly entitled not to consent to a search of the phone, the defendant's refusal, even after the government offered proffer protection, contributed significantly to an inability to resolve the matter. Given the potential importance of the defendant's phone to issues of knowledge and intent that are essential elements of a cocaine conspiracy charge, the only proper course of action in light of the Court's June 12 probable cause hearing deadline was to dismiss the action, continue the investigation and bring charges at a future date if the evidence warrants.

Even if the Court applies the factors set forth in the Speedy Trial Act, those factors favor a dismissal without prejudice. Conspiracy to distribute 5 kilograms or more of cocaine is a

serious offense, which is underscored by the 10-year mandatory minimum term of imprisonment prescribed for that charge. The facts and circumstances that led to the dismissal, as set forth above, do not support any claim of negligence, let alone a claim of bad faith. Lastly, there has been no significant negative impact upon the administration of justice. The government certainly took steps to ensure that the administration of justice was fair, responsible and prudent in this matter. The pendency of this matter thus far did not require a significant expenditure of judicial resources. While the defendant has served home confinement, there were notable exceptions for employment, education, religious services, medical appointments, substance abuse counseling, mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the probation office. As a result, the government disagrees that this was a "strict" home confinement that substantially and negatively affected the administration of justice.

For the foregoing reasons, the government respectfully requests that the Court grant dismissal of the criminal complaint without prejudice.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/

S. DAVE VATTI
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
450 Main Street, Suite 328
Hartford, CT 06103
Tel: (860) 947-1101
Federal Bar No. ct11957

CERTIFICATE OF SERVICE

       I hereby certify that on June 11, 2018, the foregoing Memorandum of Law in Support of Motion to Dismiss Criminal Complaint Without Prejudice was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/_____
S. Dave Vatti
Assistant U.S. Attorney